GALLANT *v.* GALLANT *et al.*

(Division A.   Oct. 7, 1929.   Suggestion of Error Overruled, Nov. 4, 1929.)

[123  So.  883.   No.  27635.]

*Carl Marshall* and *J. L. Taylor,* both of Gulfport, for appellant.

*Mize, Mize & Thompson,* of Gulfport, *Benedict Odum,* and *McCaleb & McCaleb,* of New Orleans, La., for appellees.

Argued orally by *Carl Marshall,* for appellant, and by *S. C. Mize* and *E. H. McCaleb,* for appellee.

Cook, J., delivered the opinion of the court.

On the 12th day of May, 1925, the appellant, Mrs. Hannah M. Hillman Gallant, filed an original bill of complaint in the chancery court of Harrison county, Mississippi, against the appellee Benjamin F. Gallant, alleging, in substance, that she was then a resident citizen of the city of New York and the defendant was a resident citizen of Harrison county, Mississippi; that on or about the 5th day of March, 1917, the appellant, complainant in the court below, obtained a judgment of divorce against the appellee in the civil district court of the parish of Orleans, in the state of Louisiana, and by said judgment was awarded alimony from that date at the rate of one hundred dollars per month; that thereafter, the appellee having failed to comply with the provisions of the said judgment relative to the payment of alimony, and having become in arrears with respect thereto, she caused execution to be issued on the said judgment so

rendered in the civil district court of the parish of Orleans, whereupon the appellee obtained an injunction against the execution of said judgment, and, upon the hearing of said cause, judgment was rendered by the said civil district court reducing the alimony to be paid by the appellee to fifty dollars per month; that the appellant prosecuted an appeal from said judgment to the supreme court of Louisiana (148 La. 82, 86 So. 661), and that court affirmed said judgment, but increased the amount thereof from fifty dollars to seventy-five dollars per month from and after July 15, 1918, as appeared from a certified copy of said judgment attached as an exhibit to the bill of complaint. The bill further alleged that, after the affirmance of said judgment by the supreme court of Louisiana, the appellee removed from the state of Louisiana to Harrison county, Mississippi, that he had again become in arrears in the payment of alimony as awarded by said judgment, and was then due her thirteen installments at the rate of seventy-five dollars per month, amounting to one thousand and fifty dollars, for which sum, with the continuing payments of seventy-five dollars per month as allowed by the judgment of the Louisiana supreme court, she prayed that a decree be entered.

On December 9, 1927, the appellant filed an amended bill of complaint against the appellee and several additional parties, in which she alleged that up to and including November 15, 1927, the appellee was in arrears in the payment of alimony under the said Louisiana judgment in the sum of three thousand and three hundred dollars, representing thirty-four monthly installments at the rate of seventy-five dollars per month, that, for the purpose of defeating the appellant in the collection of said alimony due her, the appellee had conveyed to, and purchased in the name of, the other defendants, property of much value; and prayed that a decree be entered in favor of appellant for the amount alleged to

be due her, and that the said conveyances to the other defendants be set aside and the property subjected to the payment of the amount so adjudged to be due her.

The demurrers interposed by the several defendants to this amended bill of complaint were sustained, and thereafter the appellant filed a second amended bill setting forth more in detail the charges of the first amended bill, and averring that the said judgment of the Louisiana supreme court had not been modified, amended, or rescinded by any action of the courts of Louisiana, and that it was final and irrevocable in her favor; that, since the affirmance of the said judgment by the supreme court of Louisiana, the appellee had removed himself from the jurisdiction of the courts of the state of Louisiana; that he was in contempt of the courts of Louisiana, for the reason that he had refused to pay alimony to the appellant as ordered by the courts of that state; that he had no property or effects in the state of Louisiana upon which execution could be levied; that he had no attorneys in that state upon whom process might be served that would be binding upon him; that repeated demands had been made upon the appellee for the payment of the alimony decree by the courts of Louisiana, but payment thereof had been refused; and that the amount then due was three thousand seven hundred and fifty dollars, representing forty-nine monthly installments at seventy-five dollars per month. The prayer of this amended bill was substantially the same as that of the first-amended bill.

To the last-amended bill of complaint the appellee demurred on the ground, first, that there was no equity on the face of the bill, and, second, that the amended bill of complaint shows on its face that the purported decree or judgment sued on is one which the courts of Louisiana have the power to revoke, and is therefore not such decree or judgment that the courts of Mississippi will give full faith and credit to under the laws and Constitution

of the United States; while the other defendants demurred on the ground that "the bill of complaint as amended states no cause of action against these defendants, and there is no equity on the face of the bill."

Upon the hearing of the cause the demurrers to the bill of complaint as finally amended were sustained, and, the appellant having declined to plead further, the bill was dismissed, and from the decree so entered this appeal was prosecuted.

The questions presented by this appeal, as stated by counsel for the appellee, are: (1) Is the decree of the Louisiana court awarding appellant alimony payable in monthly installments becoming due long after its rendition, and under which past-due installments remain unpaid, but the total amount of which has never been fixed by the court of original jurisdiction, such a decree as the Louisiana court has the power to revoke or modify; and (2) if past-due installments under said decree of the Louisiana court are revocable or subject to modification within the discretion of the court that rendered it, then can the court of Mississippi give full faith and credit to said decree of the Louisiana court under the Constitution of the United States?

In passing upon these questions, we shall reverse the sequence adopted by counsel and will first consider the second question stated by them. In the cases of *Barber* v. *Barber,* 62 U. S. (21 How.) 582, 16 L. Ed. 226, *Lynde* v. *Lynde,* 181 U. S. 183, 21 S. Ct. 555, 45 L. Ed. 810, and *Sistare* v. *Sistare,* 218 U. S. 16, 30 S. Ct. 682, 686, 54 L. Ed. 905, 28 L. R. A. (N. S.) 1068, 20 Ann. Cas. 1061, the supreme court of the United States has very clearly laid down the rules applicable in determining when the full faith and credit clause of the Constitution of the United States (article 4, section 1) applies to a judgment for alimony which is payable in future installments. In the Barber case, the supreme court of the United States held that, when a court having jurisdiction of these suits has

allowed a wife suitable maintenance and support, by way of alimony, "it becomes a judicial debt of record against the husband, which may be enforced by execution or attachment against his person, issuing from the court which gave the decree; and when that cannot be done on account of the husband having left or fled from that jurisdiction to another, where the process of that court cannot reach him, the wife, by her next friend, may sue him wherever he may be found, or where he shall have acquired a new domicil, for the purpose of recovering the alimony due to her, or to carry the decree into a judgment there with the same effect that it has in the state in which the decree was given."

In the *Lynde case, supra,* the complainant, Mrs. Lynde, had recovered a decree in a court of chancery of New Jersey for a fixed sum as alimony due at the date of the decree, with counsel's fees, and eighty dollars weekly from the date of the decree. An action on this New Jersey decree was brought in New York, and recovery was allowed by the trial court for the alimony due at the date of the New Jersey decree, with interest, counsel's fees, and costs, and for the installments that had accrued from the date of the New Jersey decree to the commencement of the action in New York, and the judgment also directed the payment of future alimony as fixed in the New Jersey decree. Upon appeal this judgment was modified by the court of appeals of New York by allowing recovery only for the alimony fixed in the New Jersey decree as due at its date, with interest and counsel's fees, and disallowing the recovery of the installments accrued and to accrue after the date of the New Jersey decree. This judgment of the court of appeals of New York was affirmed by the supreme court of the United States; and in the *Sistare case, supra,* that court had under consideration the question of whether or not the Lynde case overruled the Barber case, or was necessarily in conflict therewith, and after a full analysis of the facts and reasoning of the two cases, reached the

conclusion that they could be harmonized and that "on so doing it results: First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments, the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the Barber case, 'alimony decreed to a wife in a divorce or separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, that this general rule, however, does not obtain where, by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due."

That a judgment for future alimony and maintenance which, under the law of the state, may at any time be annulled, varied, or modified by the court rendering it, is not, as to such alimony, a final judgment enforceable in another state under the full faith and credit clause of the Constitution, has also been held in numerous decisions of other courts. In the case of *Barclay* v. *Barclay*, 184 Ill. 375, 56 N. E. 636, 637, 51 L. R. A. 351, in discussing the nature and effect of a decree for alimony, the court said:

"The decree for alimony may be changed from time to time by the chancellor, and there may be such circumstances as would authorize the chancellor to even change the amount to be paid by the husband, where he is in arrears in payments required under the decree. . . . The peculiar character of the obligation is such that it

is always subject to modification by the court in which the decree was entered, according to the varying circumstances of the parties, and no other court could undertake to administer the relief to which the parties are entitled except that having jurisdiction in the original suit. An attempt to do so by such other court would bring about a conflict of authority, and a condition of chaos with reference to questions of this character, because no other court would have before it the facts with reference to such change in conditions and as to such original right of the parties."

In the well-considered case of *Hunt* v. *Monroe,* 32 Utah, 428, 91 P. 269, 273, 11 L. R. A. (N. S.) 249, the authorities bearing upon this question are collated and analyzed, and, after a particular consideration of the effect of the cases of *Barber* and *Lynde, supra,* the court announced the conclusion that ''an action upon a judgment or decree for alimony or maintenance, rendered by a court of competent jurisdiction of one state, may be maintained in another court of competent jurisdiction of another state, where the amount due or payable is fixed, having a definite sum presently due and enforceable in the state where rendered; but that alimony or maintenance becoming due in the future, payable in installments, is not a final judgment upon which an action can be brought, unless and until the court which rendered it passes upon and fixes the specific amount due and payable, in some proper proceeding in the original action, or by an independent action, if such can be maintained in the state where the original order or judgment was entered."

Among other cases supporting the doctrine announced in the case cited above may be found the following: *Israel* v. *Israel,* 79 C. C. A. 32, 148 F. 576, 9 L. R. A. (N. S.) 1168, 8 Ann. Cas. 697; *Page* v. *Page,* 189 Mass. 85, 75 N. E. 92, 4 Ann. Cas. 296; *Mayer* v. *Mayer,* 154 Mich. 386, 117 N. W. 890, 19 L. R. A. (N. S.) 245, 12 Am. St.

Rep. 477; *Van Horn* v. *Van Horn,* 48 Wash. 388, 93 P. 670, 125 Am. St. Rep. 940; *Cureton* v. *Cureton,* 132 Ga. 745, 65 So. 65; *Henry* v. *Henry,* 74 W. Va. 563, 82 S. E. 522, L. R. A. 1916B, 1024; *Gilbert* v. *Gilbert,* 83 Ohio St. 265, 94 N. E. 421.

The difficulty in applying to the case at bar the rules announced in the Sistare case arises, however, in passing upon the first question stated by counsel; that is, is the decree of the Louisiana court awarding appellant alimony payable in monthly installments, and under which past-due installments remain unpaid, but the total amount of which has never been fixed, such a decree as the Louisiana court has the power to revoke or modify? Counsel have cited numerous Louisiana cases bearing upon the force and effect of judgments for alimony *pendente lite* and the power to revoke and modify such judgments, but no cases have been cited, and our independent research has failed to find any directly in point upon the question of the right of the Louisiana court to revoke or modify a judgment for permanent alimony after monthly installments have accrued thereunder; and therefore our conclusions upon that question must be reached by a consideration of the respective statutes authorizing allowances of alimony *pendente lite* and permanent alimony, and by analogy from a consideration of the decisions involving alimony *pendente lite.* The statute which requires the allowance of alimony *pendente lite* is found in article 148 of the Revised Civil Code of Louisiana, which provides, "if the wife has not a sufficient income for her maintenance during the suit for separation, the judge shall allow her a sum for her support, proportioned to the means of her husband," while the statute authorizing permanent alimony is found in article 160 of such Code, the provisions of this article being as follows:

"If the wife who has obtained the divorce has not sufficient means for her maintenance, the court may allow her in its discretion, out of the property and earnings of

her husband, alimony which shall not exceed one-third of his income.

"This alimony shall be revocable in case it should become unnecessary, and in case the wife should contract a second marriage."

It will be noted that under article 148 the allowance of alimony *pendente lite* is mandatory, provided the wife has not sufficient income for her maintenance during the suit, while under article 160, although the wife may not have sufficient means for her maintenance, the allowance of permanent alimony out of the property and earnings of the husband is discretionary with the court granting the divorce, and is limited to the maximum of one-third of his income, and is expressly made revocable in case it should become unnecessary for the wife's maintenance or in case she should contract a second marriage.

In making an allowance of alimony in installments payable in the future, it seems clear that, in order to comply with the condition of this statute, that the alimony shall not exceed one-third of the husband's income, the court must necessarily estimate that income from the facts before it at the time, and, if in the future, on account of changed conditions and earning power of the husband, the allowance becomes incorrect or inequitable when measured by this statutory requirement, or if prior or subsequent to the maturity of unpaid installments the divorced wife has become possessed of sufficient means for her maintenance, the court in the exercise of its discretion may revoke the alimony entirely, or, if the wife has independent means, but not sufficient for her proper maintenance, it may, within the maximum limit of one-third of the husband's means, so modify the allowance as to supplement the means of the wife sufficiently to properly provide for her maintenance. *Abrams* v. *Rosenthal,* 153 La. 459, 96 So. 32. It does not, however, necessarily follow from the conclusions last above stated that the court of original jurisdiction may

revoke or modify past-due installments of permanent alimony, or that a judgment for permanent alimony is not such a final judgment as may be enforced without further notice to the husband on application to the court of original jurisdiction to fix the amount due and order execution thereon; and, in the absence of a decision of the supreme court of Louisiana on this point in a case involving permanent alimony, we must base our conclusions upon the rulings of the Louisiana court in analogous cases involving past-due installments of alimony *pendente lite.*

In the case of *Compton* v. *Airial,* 9 La. Ann. 496, the plaintiff appealed from the refusal of the district judge to grant a peremptory mandamus upon the clerk of the district court commanding him to issue a *fieri facias* for arrears of alimony exceeding three hundred dollars, due under an interlocutory decree in a suit pending in said court between the plaintiff and her husband. The court there said:

"Of the right of the party to enforce the decree for alimony rendered in her favor, there can be no question. But we consider the correct practice to be, that the party should address himself to the court which made the decree, and make some showing, by affidavit or otherwise, that the defendant has refused to obey the same. Thereupon the court may, in its discretion, properly render an execution for the arrears of alimony unpaid. That order would be a guide to the clerk in issuing a *fieri facias,* which writ must necessarily express some definite sum. . . . The clerk is a ministerial, not a judicial officer. The application made to him by the plaintiff was for a *fieri facias* for the sum of three hundred and sixty dollars, in execution of a decree for the payment of alimony at the rate of twenty dollars a month. It was not competent for the clerk to assume, *proprio motu,* or to decide that there was an accumulation of arrears of alimony unpaid, although due under this decree, to the

extent of three hundred and sixty dollars. This was a matter for the cognizance of the judge.''

In the case of *Imhof* v. *Imhof*, 45 La. Ann. 717, 13 So. 90, 95, the court said, in reference to an order for alimony *pendente lite*:

''A claim for 'alimony' is not only an incident of the suit for a separation from bed and board, . . . which, in the very nature of things, is indeterminate, both as to duration and as to amount, changing with varying circumstances, and shifting with different conditions. It is an order under the control of the judge, and subject to a very great extent, if not entirely, to his discretion.''

In the case of *Baker* v. *Jewell*, the judgment of the court of appeals of Louisiana was affirmed by the supreme court, and, in the opinion of the supreme court, which is reported in 114 La. 726, 38 So. 532, 533, the opinion of the court of appeals is quoted in full, and therein the court of appeals, in discussing the case of *Compton* v. *Airial, supra,* in which there was no allegation of any application to the court for an order of *fieri facias,* said:

''Until such an order [an order for a *fieri facias*] had been had from the district judge, we do not feel able to say whether he would have allowed the whole of the amount, part of it, or none of it. It may well be assumed that he would have been guided by the circumstances presented at the time of the application. It may be that a settlement of the community in a certain way might lead him to revoke the order for alimony, or that he might find the amount awarded inadequate, or unnecessary, or excessive. . . . Therefore no definite sum can be assumed as representing a claim for alimony until on application for a *fi. fa.* the court names a specific sum for which there shall be execution.

''Until execution issues, the amount due remains inchoate and in abeyance. . . . The analogy suggested

by respondent of tacit mortgage formerly obtaining recognition though indeterminate, is not apt. Thus a minor's mortgage can be enforced only after the tutor's functions terminate, and only for the amount judicially ascertained to be due at that time. Until such judgment is rendered as declares a specific sum to be due it, it operates as a legal, and not a judicial, mortgage. Such is not the case with a decree for alimony, arising not by operation of law, but by judicial action, and which may be amended or revoked until its execution has been ordered."

In the case of *Abrams* v. *Rosenthal,* 153 La. 459, 96 So. 32, 34, the court again said that "an award of alimony is not a final judgment, but one which at any time is open for re-examination and modification;" and we can see no good reason why a different rule should apply in the case of unpaid installments of permanent alimony from that applied in the case of unpaid installments of alimony *pendente lite,* especially in view of the fact that the statute authorizing the allowance of permanent alimony expressly limits such an allowance to one-third of the husband's income, and provides that such an allowance is revocable in case it should become unnecessary, or the wife should contract a second marriage.

We conclude, therefore, that the decree of the Louisiana court is one that may be annulled, varied, or modified by the court rendering it, and consequently is not, as to such alimony, enforceable in this state under the full faith and credit clause of the Constitution.

The decree of the court below will therefore be affirmed.

*Affirmed.*